IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TERRY SHANE McLAUGHLIN,

    Plaintiff,

v.                                            CASE NO. 1:16-cv-55-MP-GRJ

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI of the Social Security Act (the Act). ECF No. 1. The Commissioner has answered, and both parties have filed briefs outlining their respective positions. ECF Nos. 18, 19. For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

### I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for benefits on April 2, 2012, alleging disability beginning January 2, 2009, due to syncopy, diabetes,

leaky heart valve, degenerative joint disease, and sleep apnea.  R. 218-26; 239-77.  His claim was denied initially and upon reconsideration.  At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ"), on July 14, 2014, at which Plaintiff and a vocational expert (VE) testified.  Plaintiff amended his onset date to August 31, 2010, the date he underwent a total right hip replacement.  R. 22; 42-91.  The ALJ issued an unfavorable decision on August 12, 2014, and the Appeals Council denied review.  R. 1-3, 19-34.

This appeal followed.  The sole issue presented is whether even though the ALJ afforded "substantial weight" to the opinion of a consulting examining physician, the ALJ failed to explain why he did not credit the portion of the opinion that Plaintiff would be unable to bend or perform prolonged standing or walking.  ECF No. 18.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1]  Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person

---

[1] *See* 42 U.S.C. § 405(g) (2000).

would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

---

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 20016 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The

---

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.
3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the

Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of

---

Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III.  SUMMARY OF THE RECORD

### *A. Findings of the ALJ*

The ALJ determined that Plaintiff has the severe impairments of hip degenerative joint disease status post right hip arthroplasty; degenerative disc disease/degenerative joint disease; left wrist/upper extremity osteoarthritis status post fracture and repair; left shoulder degenerative joint disease/osteoarthritis with tear; and diabetes mellitus. Plaintiff does not have an impairment or combination of impairments that meets or equals the listings.

Based on the limitations determined by the ALJ, the ALJ concluded

---

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

that Plaintiff has the RFC to perform light work with the limitations that he is able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  He can never climb ladders, ropes and scaffolds.  Plaintiff is able to occasionally reach overhead with the left upper extremity and frequently perform bilateral handling.  Plaintiff must avoid concentrated exposure to extreme cold and vibration and avoid even moderate exposure to the use of moving machinery and unprotected heights.  R. 27.

Relying on the testimony of a VE, the ALJ found that Plaintiff could not return to his past relevant work as a tractor-trailer truck driver and concrete mixing truck driver.  However, a person with Plaintiff's age, education, work experience, and RFC would be able to perform various unskilled jobs at the light exertional level that exist in substantial numbers in the national economy, such as: Cashier II; Marker; and Ticket Taker.  The ALJ therefore found that Plaintiff was not disabled.  R. 33-34.

B.  *Relevant Medical Evidence*

Plaintiff's appeal focuses on the September 2012 opinion of a consultative examiner, Dr. Robert A. Greenberg.  *See* ECF No. 18 at 19-

26. Dr. Greenberg's opinion, and the other medical evidence that is relevant to the ALJ's weighting of that opinion, may be summarized as follows.

As the ALJ explained, during Dr. Greenberg's consultative examination Plaintiff reported an inability to return to his past heavy labor as a truck driver. He also reported taking no prescription medication for back pain, although he occasionally took Tylenol. Plaintiff reported taking no medication for left wrist or right hip pain. He did not require any assistive device for ambulation. Plaintiff took medication for diabetes and also took Wellbutrin, though he reported no mental symptoms. Dr. Greenberg's examination reflected normal curvatures of the cervical, thoracic, and lumbar spine, decreased range of motion of the lumbar spine and positive straight leg raising at 30 degrees bilaterally. Plaintiff's gait and station were normal. He had decreased range of motion of the right hip and left wrist and full range of motion of other extremities. Grip was 5 out of 5 on the right and 3 out of 5 on the left due to wrist pain. Radiography of Plaintiff's right hip, which had been replaced, indicated no failure or dislocation. Lumbar radiography revealed mild disc disease and

degenerative spondylosis L4-5 and L5-S1. Plaintiff had normal left leg strength and decreased right leg strength rated 4 out of 5. Dr. Greenberg opined that Plaintiff would be unable to perform work-related activities that require heavy lifting, bending, prolonged standing or walking. R. 394-97. The ALJ afforded substantial weight to Dr. Greenberg's opinion. R. 30.

Plaintiff was treated in December 2013 for left hip pain after a fall; radiography showed a stable left hip with no evidence of acute bony trauma. Plaintiff was involved in a vehicle accident that same month and was subsequently treated for a shoulder injury and back pain, but radiography of the lumbar spine was negative. R. 512-55.

Plaintiff began receiving pain management treatment with Dr. Anuj Sharma, D.O., in April 2014. Plaintiff reported taking Oxycodone, hydrocodone-acetaminophen, and Zanaflex which improved his activities of daily living. Dr. Sharma noted an antalgic gait and no use of an assistive device. Dr. Sharma noted tender points in Plaintiff's right shoulder and right hip. Plaintiff had full range of motion in all extremities, although shoulder motion was restricted. Cervical spine range of motion was described as "labored" and the lumbar spine was "restricted." Plaintiff had

full range of motion of the hips, ankles, wrists and elbows. He was neurologically intact. Dr. Sharma's treatment plan included home exercise and continued use of medication. In May 2014, Plaintiff related left shoulder and left elbow pain, but reported decreased severity and duration of pain due to the treatment plan as well as improved activities of daily living. Cervical and lumbar range of motion were "restricted." Dr. Sharma recommended a stretching program. R. 662-75.

### C.  *Hearing Testimony*

Plaintiff was 46 years old at the time of the hearing, and he testified that he received a GED in 1984. He last worked as a truck driver in December 2008 when he was late picking up a load and was terminated. Plaintiff drew unemployment compensation for most of 2009. Plaintiff unsuccessfully sought other work as a driver. Plaintiff testified that he is unable to work due to back and hip pain and fatigue. He experiences syncope, and is losing vision in his left eye. Plaintiff testified that he cannot get help treating his diabetes and his left hip needs to be replaced. He receives health care through the Levy County Health Department every month, but cannot afford to see the doctors that they refer him to. He had

Medicaid until 2012.  Plaintiff testified that he lives in a van in a friend's yard.

Plaintiff testified that he is able to lift eight to ten pounds on and off through the day.  He testified that he could sit/stand for a total of 15-20 minutes each at one time.  He can walk 30 to 50 feet, and if he helps his friend in her yard he has to stop for breaks.  He can go up stairs but has difficulty going down.  He does not use an assistive device, except for several weeks after his hip surgery.  He has difficulty bending down to the ground but can put on his own socks and shoes.

Plaintiff testified that he lived with his daughter for a few months to help with his year-old grandson.  He does laundry in his friend's house and helps her do things in exchange for staying in her yard.  He helps wash dishes and watches her three teenagers.   When he visits his daughter he goes outside with his grandson and follows him around.

Plaintiff testified that in a typical day he does not do much due to fatigue.  If his friend needs something done and he is able, he will do it.  He is able to care for his personal needs such as dressing and bathing, and can make simple meals.  Sometimes he goes grocery shopping.  He is

able to do dishes and wash clothes. He does not do yard work, but he might pick up trash. Plaintiff testified that he spends time with his brother and his daughter and grandson. He has left shoulder pain from his December 2013 car accident, during which he tore his shoulder, and pain from a previously broken arm. R. 45-64.

The ALJ posed a hypothetical to the VE that assumed an individual of Plaintiff's age, education, and experience and the RFC for light work, with additional exertional and nonexertional limitations, as summarized above in the hearing decision. The VE testified that the person could perform the jobs of Cashier, Marker, and Ticket Taker. R. 83.

## IV. DISCUSSION

Plaintiff argues that although the ALJ afforded substantial weight to Dr. Greenberg's opinion, the ALJ failed to explain why she did not credit the portion of the opinion in which Dr. Greenberg opined that Plaintiff would be unable to bend or stand or walk for prolonged periods. ECF No. 18 at 24-26. Plaintiff contends that Dr. Greenberg's opinion is supported by the medical records from Dr. Sharma. *Id*. at 20-21.

There is no requirement for the ALJ to discuss every medical record

in the administrative record, although he is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor."[21]  Additionally, because an ALJ is not permitted to substitute his judgment for that of the medical experts,[22] the ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision.[23]  Where an ALJ fails to sufficiently explain how he reached his decision, the Court may not speculate.[24]  Thus, while the opinion of a consultative examiner, unlike the opinion of a treating physician, is not entitled to any special weight or deference, *see McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987), the ALJ must articulate the weight given to the opinion and the reasons why.

Here, the ALJ afforded substantial weight to Dr. Greenberg's opinion, finding that it was generally consistent with the objective clinical and radiographic findings.  R. 30.  The ALJ then went on to cite reasons why

---

[21] Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990)(noting "the ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence").

[22] Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986); Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).

[23] Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1337 (M.D. Fla. 2003).

[24] Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984).

the objective medical findings in the record and the course of Plaintiff's treatment do not fully support the degree of limitation alleged by Plaintiff. The ALJ specifically noted Dr. Greenberg's finding that Plaintiff had some decrease in right leg strength but that his gait and station were nevertheless normal. The ALJ then referred to the "more recent treating source Dr. Sharma's findings in April 2014," which indicated that while Plaintiff displayed an antalgic gait he did not require the use of an assistive device for ambulation. R. 31.

The ALJ pointed to other records (not disputed by the Plaintiff) that following his right arthroplasty Plaintiff progressed well, had no complications, and maintained full range of motion in the right hip. The ALJ explained that objective lumbar radiographic findings were consistent with "only mild disc disease, indicative of age-related changes," and the cervical findings were "consistent with only minimal degenerative changes, otherwise within normal limits." The ALJ again observed Dr. Greenberg's findings that Plaintiff was neurologically intact, except for slight decrease in right leg strength, had normal gait and station requiring no assistive device, and Plaintiff had been treated conservatively by Dr. Sharma with

medication and exercise, which improved Plaintiff's ADL's.  R. 31.

The ALJ also observed that Plaintiff testified to having independent activities of daily living, cared for his personal needs, assisted with some household chores, including washing dishes, picking up trash, and helping with three children, and followed his year-old grandson around the yard.  R. 32.

In sum, the ALJ did discuss and point to objective medical evidence and testimony in the record that supports the conclusion that Plaintiff is not unable to bend, stand, or walk to an extent that he is precluded from performing a reduced range of work at the light exertional level.  As the Commissioner points out, Dr. Greenberg's opinion does not quantify the amount of time that Plaintiff could stand and walk but merely opines that such activities could not be "prolonged," and his objective findings are consistent with a conclusion that Plaintiff has some limitations but generally intact functioning, as the ALJ found.  ECF No. 19 at 10.  Moreover, Dr. Greenberg's opinion is not necessarily inconsistent with the finding that Plaintiff could perform light work.  The Eleventh Circuit has explained that "[L]ight work may require either 'a good deal of walking or standing, *or* ...

sitting most of the time with some pushing or pulling of arm or leg controls.'" *Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x 911, 915 (11th Cir. 2014) (citing 20 C.F.R. § 404.1567(b)) (emphasis in original). The ALJ accounted for Dr. Greenberg's opinion regarding Plaintiff's ability to bend by limiting him to only "occasional" stooping, crouching, and crawling, consistent with the objective medical findings and testimony summarized above.

Thus, on this record, the undersigned finds that the Commissioner's decision denying benefits is supported by substantial evidence.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**DONE AND ORDERED** this 30th day of November 2016.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**